JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Delbert Buchwald appeals from his conviction after a jury trial of possession of crack cocaine.
 {¶ 2} In his three assignments of error, appellant first asserts his assigned trial counsel, whom appellant elected to discharge after the jury voir dire had been completed, provided ineffective assistance in failing to file a pretrial motion to suppress evidence. Appellant also asserts his conviction is sustained by neither sufficient evidence nor the weight of the evidence.
 {¶ 3} Following a review of the record, however, this court determines plain error of another sort occurred during the proceedings below, viz., the trial court failed to ascertain whether appellant made a knowing and intelligent decision to represent himself at trial. His conviction, therefore, is reversed, and this case is remanded for further proceedings.
 {¶ 4} Appellant's conviction results from an incident that occurred on the night of May 17, 2001. Cleveland police First District vice-unit detectives Sergeant Kevin Becker and John Schroeder were on routine patrol that night in their unmarked vehicle. At approximately 11:45 p.m., they turned eastbound onto Pear Avenue from West 74th Street.
 {¶ 5} The detectives patrolled Pear Avenue regularly due to its unique nature. The street is located in an industrial area, bounded by railroad tracks and fenced factory property. It has one residence, which at that time was inhabited by "an older gentleman"[1] who had complained "about people parking [and] engaging in drug activity, prostitution activity" on his street. In response to these complaints, the detectives had made travel on Pear Avenue part of their nightly procedure. The detectives were acquainted, therefore, with the residence owner, his vehicle, and the location he usually parked it. As a consequence of their nightly patrol, moreover, Becker and Schroeder also had made numerous arrests for drug activity on Pear Avenue.
 {¶ 6} As they turned onto the street this night, they immediately observed a "blue 1999 Olds Cutlass Sierra (sic)" parked to one side. The vehicle was unknown to them. Its motor was running and a man, later identified as appellant, was seated in the driver's seat.
 {¶ 7} The detectives decided to stop to discover the driver's purpose in being there. Becker approached appellant's side while Schroeder stayed to the rear of the Cutlass. As Becker came within "three to four" steps of the driver's door, appellant "looked up and saw [Becker] approaching and made a real quick movement down under the seat." Only thereafter did he roll down the window to speak with Becker.
 {¶ 8} Appellant was unable to produce either any identification or a driver's license for Becker's inspection; therefore, Becker placed him under arrest for operating a vehicle without a proper permit. After appellant had been secured in the rear of the patrol vehicle, Becker discovered appellant's driver's license had been suspended.
 {¶ 9} Schroeder thereupon began an inventory search of the Cutlass in preparation for its tow to the police impound lot. Directly beneath the driver's seat Schroeder discovered a "rock" wrapped in a plastic "ziploc" bag which upon later analysis proved to be crack cocaine. Schroeder found with it an aluminum "Dr. Pepper" can. The can "was indented with holes poked in it with suspected residue, crack cocaine residue" on it.
 {¶ 10} Upon being confronted with these objects, appellant stated he had purchased the rock from a man on Detroit Avenue, and that he had parked on Pear Avenue "to get high" before he "head[ed] home." The detectives later learned appellant had borrowed the Cutlass and lived in Tiffin, Ohio.
 {¶ 11} Appellant subsequently was indicted for violation of R.C.2925.11, possession of crack cocaine in an amount less than one gram. He received the services of assigned counsel to represent him.
 {¶ 12} Defense counsel thereafter filed the requisite discovery motions and appeared at the pretrial hearings. Just prior to the scheduled date of appellant's jury trial, a plea hearing was held in appellant's case. The record reflects defense counsel was unsuccessful at arranging a plea agreement between appellant and the state.
 {¶ 13} At that point, defense counsel notified the court that due to a scheduling conflict, he would have some difficulty attending appellant's trial. Defense counsel consequently requested a continuance. The trial court, however, flatly refused to grant the request. In an angry outburst, defense counsel thereupon declared he might not be present at appellant's trial.
 {¶ 14} The record demonstrates that defense counsel nevertheless appeared when appellant's case was called for trial as scheduled. Counsel further was introduced to the prospective jurors at the commencement of voir dire as appellant's representative. However, for some reason not reflected in the record, appellant suddenly decided to proceed with trial acting as his own attorney.
 {¶ 15} The trial court noted this fact, informed appellant he had that right, and told appellant assigned defense counsel would sit with him and "advise [him] and assist [him] if [appellant] need[ed] or want[ed] advice." The trial court further explained appellant would be required to comply with the rules of evidence.
 {¶ 16} After the parties stipulated to the results of the laboratory analysis of the drugs found in appellant's vehicle,[2] the trial court ascertained appellant was aware of the penalties involved with respect to the offense with which he had been charged and yet still desired to proceed with trial. Thereafter, the state presented the testimony of the two police detectives and introduced into evidence the items discovered under the driver's seat of the Cutlass. Appellant cross-examined the state's witnesses but elected to present no evidence of his own.
 {¶ 17} The jury ultimately found appellant guilty of the offense. Appellant has filed a timely appeal from the subsequent trial court order that sentenced him to a term of incarceration of eleven months.
 {¶ 18} Appellant presents three assignments of error for review. They state:
 {¶ 19} MR. BUCKWALD WAS DENIED HIS RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN HIS ATTORNEY FAILED TO PURSUE THE SUPPRESSION OF IMPERMISSIBLY SEIZED EVIDENCE.
 {¶ 20} THE TRIAL COURT ERRED IN DENYING MR. BUCKWALD'S MOTION FOR ACQUITTAL WHEN THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE THAT HE POSSESSED THE DRUGS.
 {¶ 21} MR. BUCKWALD'S CONVICTION IS AGAINST (SIC) THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 22} Appellant argues his trial counsel provided ineffective assistance by failing to file a pre-trial motion to suppress evidence. Appellant also argues his conviction is supported by neither sufficient evidence nor the weight of the evidence, contending the state failed to prove he actually possessed the crack cocaine and aluminum can found beneath the driver's seat of the Cutlass.
 {¶ 23} This court, however, finds it unnecessary to address appellant's arguments, since plain error occurred with respect to one of the trial court's omissions in this case. The trial court neglected to comply with the requirements of Crim.R. 44: it neither determined whether appellant's choice to represent himself at trial was a decision made with a full awareness of its consequences, nor obtained appellant's written waiver of his right to counsel.[3] Therefore appellant's conviction must be reversed and this case remanded for further proceedings.
 {¶ 24} In State v. Richards, (Sept. 20, 2001), Cuyahoga App. No. 78457 this court addressed the importance of a defendant's decision to waive his constitutional right to counsel and represent himself at trial as follows:
 {¶ 25} It is axiomatic that a criminal defendant has a right to counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution. Moreover, the Sixth Amendment * * * guarantees that a defendant * * * has an independent constitutional right to self-representation. State v. Gibson (1976), 45 Ohio St.2d 366, 345 N.E.2d 399, paragraph one of the syllabus, citing Faretta v. California (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562.
 {¶ 26} To effect a valid waiver of the right to counsel, it is necessary that the trial court make sufficient inquiry to determine whether defendant fully understands and intelligently relinquishes that right. Id. at paragraph two of the syllabus. Before concluding there has been a waiver, the court must be satisfied that the defendant made an intelligent and voluntary waiver with the knowledge that he will have to represent himself and that there are dangers in self-representation. State v. Ebersole (1995), 107 Ohio App.3d 288, 293, 668 N.E.2d 934.
 {¶ 27} The Gibson court applied the test set forth in Von Moltke v. Gillies (1948), 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 to establish the requirements sufficient to satisfy this pretrial inquiry.
 {¶ 28} * * * This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. To discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.
 {¶ 29} Gibson, 45 Ohio St.2d at 377. Thus, a court cannot abdicate its responsibility to sufficiently inform a criminal defendant as to that defendant's waiver of the right to counsel merely because that defendant manifests a desire, however eloquently stated, to represent himself. Nor can the court satisfy this responsibility by standby counsel. However laudable, such appointments do not absolve the trial court from its responsibility to insure that the defendant is aware of the range of allowable punishments, the possible defenses to the charges and circumstances that might serve in mitigation as well as any other facts that would demonstrate that the defendant understood the entire matter.
 * * * {¶ 30} From the record before this court, it cannot be said that appellant's decision to waive counsel and represent himself was made knowingly, intelligently or voluntarily * * *.
 {¶ 31} * * * [T]here is nothing in the record * * * to suggest that appellant understood * * * the possible defenses to the charge against him in order for him to make a knowing and intelligent decision to represent himself. This court has previously found such lack of compliance to be reversible error and not subject to harmless-error review. See State v. Jackson (Aug. 2, 2001), Cuyahoga App. No. 78695, unreported; State v. Melton (May 4, 2000), Cuyahoga App. No. 75792, unreported.
 {¶ 32} While the dissent agrees that the record does not support strict compliance with the standard set forth in Von Moltke, it suggests that substantial compliance is sufficient. In particular, the dissent opines that the totality of the circumstances support that appellant was well versed in the law and that his background, experience and conduct during the pretrial proceedings and trial demonstrate that appellant understood that he was waiving his right to counsel. We disagree.
 {¶ 33} First, this court has not followed that line of cases from other districts that hold that substantial compliance is sufficient when effecting a waiver of the right to counsel. See State v. Jackson (Aug. 2, 2001), Cuyahoga App. No. 78695, unreported; State v. Melton (May 4, 2000), Cuyahoga App. No. 75792, unreported. To the contrary, both Melton and Jackson imply that there must be strict compliance with the standard set forth in Von Moltke in order to establish an effective waiver of the right to counsel.
 {¶ 34} Second, we disagree that the record supports that appellant is well versed in the law. Appellant is not a lawyer. Merely because he filed numerous pro se motions that appear to use lawyer-like language is not equivalent to an understanding of the law. Had this been the case, then he would have included the appropriate language in order to comport with Von Moltke at the time he filed his motion requesting to proceed without standby counsel. If he had done so, then our decision may have been different.
 {¶ 35} (Emphasis added.) See also, Lakewood v. Gray (Aug. 30, 2001), Cuyahoga App. No. 78319.
 {¶ 36} The foregoing analysis applies as well in this case. Appellant's decision to represent himself apparently was presented to the trial court between the conclusion of voir dire and the commencement of opening argument. The trial court at that point made no record of appellant's reasons underlying his decision, explained none of the dangers of self-representation, and did not obtain appellant's waiver of his right to counsel in writing prior to permitting appellant to proceed.
 {¶ 37} Under these circumstances, the error that occurred was "so fundamental that [it] obviate[s] the necessity for a reviewing court to do a harmless error analysis." State v. Hill (2001), 92 Ohio St.3d 191,199. Clearly, without a competent decision to proceed with self-representation, a defendant cannot obtain a "fair and accurate trial the first time around." Id., quoting Johnson v. United States (1997),520 U.S. 461 at 466.
 {¶ 38} Since plain error of a "structural" nature thus is extant in the record, appellant's conviction is reversed. Appellant's assignments of error are rendered moot. App.R.12(A)(1)(c).
Appellant's conviction and sentence are reversed. This case is remanded for further proceedings consistent with this opinion.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. and FRANK D. CELEBREZZE, JR., J. CONCUR
[1] Quotes indicate testimony given by a witness at appellant's trial.
[2] The laboratory analysis established the cocaine weighed a total of .12 grams.
[3] Crim.R. 44 provides in pertinent part:
RULE 44. Assignment of Counsel
 (A) Counsel in serious offenses. Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.
 * * * (C) Waiver of counsel. Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing.